will be arguing the case in a minute and also Kathleen Bradway and we thank the court for the opportunity. Thank you. Sir, we appreciate your help. Ms. Waring, we are pleased to hear from you. May it please the court. My name is Ashley Waring and I represent Mr. Joseph Newbold, the appellant in this matter. The issue for this court today is to determine whether Newbold's judgment should be remanded to the Middle District of North Carolina with instructions that he be re-sentenced without the Armed Career Criminal Act, or ACCA, enhancement in light of United States v. Simmons, a case this court decided in 2011. As in baseball, ACCA means three strikes and you're out. Once you receive your third strike, you are then subjected to a sentence enhancement. Here, one of Newbold's strikes should not have been a strike at all. The court should remand for two reasons. First, because Simmons should apply to ACCA. The second is because Newbold's 1984 conviction should not have been considered an ACCA predicate. In 2005, Newbold was sentenced in the Middle District of North Carolina. When he was sentenced, he objected to his pre-sentence hearing that stated that his 1984 conviction was considered an ACCA predicate. Newbold argued that his 1984 conviction, he had seven convictions actually, in 1984. Do you know which one they're counting against him of those seven? They're counting the Class H felonies as a whole, Your Honor. Weren't there two of those? There were three of those, Your Honor. Three of those, okay. Yes, Your Honor. However, he... Class H felony. I'm sorry, Your Honor. So Class H, is that what you said? Yes, Your Honor. And it had a ten-year maximum penalty and a three-year presumptive penalty. Yes, Your Honor. The ten-year maximum penalty was only if aggravating factors were found. Here, under Newbold's sentence, no aggravating factors were found. Newbold argued that he had no convictions in his... in 1984 that subjected him to the aggravated penalty or the aggravated sentence. He argued that he did not have any prior state drug offenses with the maximum penalty of two years or more. On direct appeal, this court agreed with Newbold and acknowledged that he did not, in fact, have any maximum penalties that subjected him to ten years or more. In fact, this court acknowledged that the was six years. However, relying on United States v. Harp, a court case... a case this court decided in 2005, the court stated that the proper inquiry was not whether the individual defendant was actually sentenced to the maximum penalty, but whether any hypothetical worst defendant could have been sentenced to that maximum penalty. Now, the government doesn't rely here on Harp. No, Your Honor. One of the things, as I understand it, the government relies on is the fact that he pled guilty, and therefore the court was not obliged to make any findings with regard to aggravating factors. Yes, Your Honor. So he sort of... he sort of stuck with that. Is that your understanding? And if so, what's... what's your response? If I understand your question correctly, are you asking that because he pled to the 17 years, why does he not... why is he not subjected to the H felony? Yes. Which, with aggravating factors, would have subjected him to a sentence of more than ten years, correct? Correct, Your Honor. And so the government says the record's not there because he pled guilty. It would have been there, perhaps, if he had not pled guilty. Yes, Your Honor. Under the Fair Sentencing Act that he was subject... that he was sentenced under in 1984, he... one of the options that the judge could have found was just a separate plea agreement or to have aggravating or mitigating factors, there they can shy away from the presumptive terms. Here, however, he only received each presumptive term, and the court should look at each convicted conviction individually. As Your Honor noted... you noted before, he was subject to... he was sentenced to... he was charged and convicted with seven different convictions. None of those seven convictions actually had a presumptive sentence of ten years or more. But it did... ten-year aggravated sentence, correct? Yes, but that's only if a hypothetical worst defendant. Here, we are arguing that the court should use the individual defendant standard, which this court has practiced... begun to use after United States v. Simmons and after Miller v. United States. But wouldn't this individual... is your argument that this individual would not have been eligible even had aggravating factors been put on the record and findings made? We are arguing if then yes, that would be considered an act of predicate. Here, however... The government says they were because he pled guilty. Yes, Your Honor, the government is saying that there... that there were not because he pled guilty. But if Your Honor's turn to Joint Appendix pages 278 to 281 on the judgment and commitment, it only states that he received the presumptive penalties. Right next to the box where the presumptive penalties were found, then you will see the maximum penalties if aggravating factors were found. And even then, the court must state such aggravating factors. Under Simmons... Even in a guilty plea? I'm sorry, Your Honor? Even when there's a guilty plea, the court must state aggravating factors? Is that what you're saying? If there were aggravating factors, there... the court must state such aggravating factors. With the plea agreement, if he would have received the maximum penalty, the judge still should have said something. In the... stated some... should have said something in the record. By maximum penalty, you mean the 10 years? Once more, I'm so sorry. By maximum penalty, you mean the 10 years? Yes, Your Honor, for the Class H and the Class I findings would have received a maximum of Yes, Your Honor. Because the plea agreement said even though if you add them all together, he potentially could have gotten 52 years. The plea agreement was that he would not get... he would get 17 years. With the first judgment and commitment, Your Honor, on pages 278 to 279, he could have received 25 years. I thought there was a 52-year mention in there, but the plea agreement was three of the seven offenses had the presumptive sentence of three years. Four of them had the presumptive sentence of two years, or an aggregate of 17 years, and they said that he could... the plea agreement was 17 years. Yes. And they dismissed the misdemeanor. Yes. Which on the face of it didn't sound like much of he played the seven. He got the leaseman thrown out. But anyway, there were no aggravated factors found. No, Your Honor. And the aggravated factors were only hypothetical. Yes, Your Honor. And we talked about hypothetical stuff in the Simmons. Yes, Your Honor. Is there any way that you can figure out that the government... are you saying the only issue here is where Simmons applies? Yes. Is there something beyond that that you have to show to win? If Simmons applies, is there any way you can lose? No, Your Honor. No, Your Honor. Unless Your Honors decide that the 1984 conviction actually was an act of predicate, there is no way that we should lose, Your Honor. Unless we make a serious mistake. The court never makes mistakes, Your Honor. But the government says that we shouldn't even decide any of this. Yes. That we ought to remand this to the district court and give them the first... and give the district court's first shot at it, since there's all this... all these new cases that have come up. I think the district court dealt with this and last in 2010. And what did you got? Cacciatore and Simmons and Miller. Yes. Coming after that. Yes. So why shouldn't we just vacate and remand and not deal with the merits of it and let district court deal with it first and assess those new authorities? Your Honor, this court should not just vacate and remand the case for the simple fact that this is the chance for the court to establish precedent. This court has... We don't have some roving witness to decide legal issues because we make them very interesting or something. There's a system set up where, as a normal proposition, the district judge decides it first and then we look at what they did and see whether they're right or wrong. Yes, Your Honor. However, for judicial efficiency, this court has already decided United States versus Norman in 2013. And it was an unpublished case. However, this court has stated that Simmons should apply to ACCA. This is a chance for the... this is the opportunity for the court in order to establish with precedent that Simmons should apply to ACCA that the lower courts could follow. Of course, this court can simply vacate and remand. Simmons wasn't an ACCA case. Simmons was not an ACCA case. Simmons was... We have to stretch Simmons a little bit. You wouldn't have to stretch it a little bit, Your Honor. The Controlled Substances Act and ACCA all have the same purpose of punishing the individual defendant for their individual crime. Additionally, in the Supreme Court case of Cartree-Rosano versus Holder stated that the hypothetical defendant standard had a false premise and this court also did away with that when it decided United States versus Norman, which was an ACCA case and this court applied Simmons to that. Under Simmons, the hypothetical defendant standard was overruled... was thrown out as was Harp, which is what Newbold was sentenced under. The court decided that the individual defendant standard should be applied. Additionally, in Miller versus United States, a case this court decided in 2013, the court stated that, and I quote, we no longer look to the maximum sentence that North Carolina courts could have imposed for a hypothetical defendant who was guilty of an aggravated offense or had a prior criminal record. Additionally, Miller held that Simmons did apply retroactively. Because the court rejected Harp's hypothetical defendant standard, this court should not we request that this court apply this retroactively to ACCA predicates. Additionally, both Simmons and... Norman is unpublished, is that right? Yes, your honor. However, it still demonstrates, it still implies this court's willingness and new practice of the individual defendant standard and not the hypothetical defendant standard. If we, if we think that Norman is correct, your position, do you win? If, are you asking if Norman is correct, then we win? Yes, your honor. So, okay, even though it's unpublished, you say if it's right, it takes care of it. Yes, your honor. We would win on the Simmons applicability to ACCA. However, this court also should decide whether... Norman was actually before Miller, wasn't it? Norman was in 2012 and Miller was in 2013, so yes. It was a pre-Miller case, but Simmons was retroactive. Yes, thus this court should not declare that Miller, that Simmons should only apply to the Controlled Substances Act and not to ACCA. Moreover, in Simmons, the government attempted to single out different felonies over another and the court... What's your best argument that the, that the Simmons principle applies to the ACCA? Our best argument that the Simmons principle should apply to ACCA, because in Miller, the court acknowledged, this is no longer to look to the hypothetical defendant. Do you have any cases that say that Harp applied to ACCA? Um, no, your honor, no. That helped you? You had one of those? If we had any post-Simmons cases that Harp applied to ACCA, that would not help us, your honor. Harp was overruled by Simmons. By Simmons, yes, your honor, but we don't have any. But prior to Simmons, if Harp, the Harp theory had been applied to ACCA, what do you think of that? Prior to Simmons, in that court, that case would not help us. However, post-Simmons, if there were any... No, but Harp was the theory that, that the government, that they relied on. Yes, your honor. But there was a Fourth Circuit case in 2007 that applied the Harp principle to ACCA. So Harp was, had already been extended to ACCA when, when Simmons overruled Harp. That's my point. So if the question here is whether Simmons applies to ACCA, Simmons overruled Harp, well, you could argue that, I think that if Harp applied to ACCA, well, Simmons would too. Yes, we could argue that, your honor. If Harp did apply to ACCA and Simmons overruled Harp, then Simmons should apply to ACCA as well. We could also use that argument as well. There's a case called Williams in 2007 that's actually written by our Judge Williams that did that. Yes, your honor. As we've already touched on, Newbold was sentenced to the, was sentenced under the Fair Sentencing Act. Additionally, Newbold's 1984 conviction shows that he should not have received a aggravated maximum sentence of 10 years or more, and it should not have been considered an act of predicate. When Newbold was sentenced in 1984, Section 15A-1340.4, or the Fair Sentencing Act, gave Class H and Class I felonies presumptive terms of three years or two years individually. Under the Act, a judge couldn't pose an aggravated maximum sentence or a mitigating sentence if those factors were found. However, the judge had to have stated those factors in the record. Additionally, as your honors have already seen, Newbold could not have received a maximum sentence of 10 years for the Class H felonies or five years for the Class I felonies. Here, he was only sentenced to the presumptive term for each individual conviction that only had three years or two years respectively. On joint appendix pages 278 and 279 for the first judgment and commitment, he was only sentenced to two Class H felonies and two Class I felonies, both of which were presumptive terms. Both of which received the presumptive sentence. The second judgment and commitment, on pages 280 to 281, he received one Class H felony presumptive term of three years and two Class I felonies presumptive term of three years. Newbold's 1984 convictions only added up to 17 years total for seven individual convictions. Each conviction should be looked at separately, one determining whether he had a state court drug offense that was over 10 years. That was subjected to the act of predicate. Here, he had no such thing. Because when you add all seven charges together, he only received 17 years. Had there been any aggravating factors or had he been sentenced to the enhanced penalty, he could have received 25 years for the first judgment and commitment and 20 years on the second judgment and commitment. However, he only received 10 years on one and seven years on the other. The judge made no findings of aggravating factors, nor has the government ever argued or is currently arguing that there were aggravating factors that would put him over the 10 year minimum or 10 year maximum. Additionally, even if there had been aggravating factors, the court would have to look at what Mr. Newbold received individually, not what he could have received, which is the hypothetical defendant standard. The Newbold's Class H felonies and Class I felonies were not punishable by 10 years or more. Thus, he should not have been subjected under the ACCA enhancement and it was not considered an ACCA predicate. Unless the court has any additional questions for me, I will conclude. In conclusion, for reasons stated in oral argument and in brief, Newbold respectfully requests that this court apply United States v. Simmons to ACCA. Additionally, Newbold respectfully requests that this court remand his judgment and with instruction to the district court that he be resentenced without an ACCA enhancement. Thank you, Your Honor. Thank you. Mr. Joseph. Members of the court, good morning, Your Honors. Thank you for letting me appear. Your Honor, I would point out that in the transcript of plea on page 276 of the record, as Judge King has pointed out, in the middle of that page, on this transcript of plea, which is a sworn document the defendant was sworn to back in 1984, 30 years ago, do you understand that upon your plea you could be in prison for a possible maximum sentence of 52 years? His argument today is directly contrary to what he swore to in 1984, that he could get 52 years. Now, how could he have gotten the 52 years? There were three class, there were three 10-year felonies and four 5-year felonies. The issue here is, is one of these felonies, is that an offense for which the maximum term of imprisonment of 10 years or more is prescribed by law? The issue isn't whether he could have gotten it or somebody else could have gotten it. It's just a matter of category. That doesn't add up, though, what you just said. Three 10s is 30 and four 5s is 20. Yes, he had a two-year misdemeanor that was dismissed, Judge. Pardon? He had a two-year misdemeanor that was dismissed. Well, he wasn't pleading to that. Under that plea, he couldn't have gotten 52 years, so the 52 has got to be wrong. It isn't wrong by two years. The indictment charged him with offenses. Yes, but if we're talking about two years here, it's like… I know, but what he pled to, it says in the next paragraph, I think, that he was going to get 17 years. At the very end, at number 12, but I would just indicate that he couldn't have gotten 52 or 50. He couldn't have gotten 52 years on the plea because he didn't plead to charges that permitted 52 years, even if he got the statutory maximum. Yes, Judge, Your Honor, but this is discussing what the maximum term of imprisonment is, and that carries some weight. Yes, that carries some weight. But they dismissed that misdemeanor. I would just admit that that carries some weight, whatever the court wants to. But I think that's an important factor I would just point it out. Okay. Your Honor… You say it carries weight. I'm not sure I know what you mean by that. It's the plea transcript showed what he could get for all of his crimes. Now, maybe they put two years in there. They shouldn't have been in there for the misdemeanor because the misdemeanor was dismissed. But that does indicate, I would submit, Judge Davis, what the maximum term of imprisonment was. We don't need the plea transcript to know what the statutory maximum possible sentence is. No, you don't, but it's a fact. Correct? But it's a fact. I'm just not following when you say it adds weight. I don't know that it adds anything other than the statute. I mean, the fact that he was charged with an offense doesn't add weight to our understanding of the plea. It shows what the parties understood at that time, I would submit. It shows what that court and the prosecutor and the defense understood what his maximum was. So, I understand what the court is saying. Under the indictment. Yes, under the indictment. Not under the plea. Well, it's a difference of two years. Well, that's different. But we're talking about… You can't get to 50 years with recitations of what the charges are. It's a recitation of the charges. What the… Your Honor, there's one other thing I want to point out. Do you think Simmons applies here? No, I don't think, Your Honor. Because it's not an ICA case? Or what's your argument? My argument is that the courts that have considered it, this is not a new argument, that the courts that have considered this, other defendants have argued, I couldn't have gotten 10 years for my crime. I couldn't have gotten 10 years because of plea agreement, because I was sentenced in a court… You're talking about those cases you cited in your plea agreement? Yes, sir, I do. But those are all pre-Cacciatore and pre-Simmons. Yes, but it doesn't… They're all pre… You acknowledge that the only case subsequent that we have is that Norman case, which is unpublished, which is not precedent to us, but it is a Fourth Circuit case. The logic of those cases, I would submit, is something to look at. There's no other cases that are available. They were looked at in the context of Simmons, and the Harp case was consistent with those cases you cite, and we expressly overruled Harp, did we, in Simmons? Judge Keene, Your Honor, those cases, as far as I could tell, don't depend on any hypothetical factors. What they talk about, they talk about different things and not anything as a whole, I'm sure. But the general gist of those cases is that we look at the ceiling. We look, how did the state categorize that crime? Now, in this case, if you look at page… On the second page of each judgment, page 279 and page 281, there's a box that's checked, and it's faint, it's not a good copy here in the Joint Appendix 279 and 281, and it explains why that court did not find aggravating factors. The basis for this plea was the plea agreement, and the court said… The plea agreement is this document you're looking at, which is not a typical plea agreement like we look at in the federal court. No, but it was typical at that time. I practiced in that court. It was a state court. That's right. They didn't have a written plea agreement. They put it in whatever the… A transcript of plea. Which, Your Honor, Judge Keene… Was this in, what, Guilford County? Yes, Your Honor. Yes, Your Honor, that's right. The court found on page two of each judgment the reason for no aggravating factors was that the sentence was entered pursuant to a plea arrangement, and the law in North Carolina, and you've got it in front of you at page 264 and 265, is that at that time a court could impose any sentence pursuant to a plea arrangement. So their whole case really comes… You're sort of turning Valdovinos on its head, aren't you? No, Your Honor, I'm not. It seems like that's what you're doing. In Valdovinos, over my dissent, the court held that a capped plea agreement statutorily authorized did not deprive a court of imposing a sentence in a presumptive range. It doesn't change the underlying offense. Here you're arguing that because the plea agreement permitted an aggravated sentence, even though the court didn't make the findings, even though there's nothing in the record to support a suggestion that the court could have made the findings, you're saying, oh, now the law of North Carolina should bump it up to the statutory maximum, even though in Valdovinos our court said it couldn't bump it down to the plea agreement maximum. I understand, I think, a little bit about what Your Honor is saying. You're not turning Valdovinos on its head. No, Your Honor, that's not my intent. Not to me. Well, I understand the court knows far more. The 17 years wasn't agreed to? It was agreed to, but what I'm trying to say, maybe I'm swimming against the tide, but what I'm trying to say is that they attach great significance that there's no aggravating factors. But it's clear that the 17 years was agreed to. It was agreed to. It's binding. It says shall receive. Yes, but what their whole argument comes down to, it seems to me. And that's as far as it could go without aggravating factors. Your Honor, it's like this court baked a cake, and they want to go back and say, well, now, what would we have done if we'd have made cupcakes? What would it have been if we had individual cases? And what I'm saying to you is the reason for it, they want to say there's some significance to be attached to the fact there's no aggravating factors. That's a big part of their case. Now you've got me thinking about cakes. But I'm still listening. I'm sorry, Your Honor. I skipped breakfast. I guess your argument, I guess, is that what you receive as a result of the plea agreement does not cap what your maximum was, not as a hypothetical, but as an individual defendant. Because I assume what you're arguing is that based on the plea agreement, you could have got X. The fact that you got Y does not cap it for Simmons' analysis. What you're saying is it's not hypothetical. It's just that what you have in that situation, you don't have aggregated factors because you're saying it wasn't necessary. The law didn't require it, and their whole case depends on there's no aggravating factors. That's really what it comes down to. If you buy what they're saying, well, there's no aggravating factors here, so he couldn't have gotten the 10 years. And what I'm saying to you is that's turning on the head what the state court did. They packaged it together. There's no way to know what he would have gotten for that one crime. There is no way to know. The prosecutor didn't have to file an enhancement. The court could have just given him whatever they wanted to. And what I'm saying is that, what I'm arguing respectfully, is that the court didn't have to find aggravating factors. It's so found on page 2 of each judgment. We're not finding aggravating factors because there's a plea arrangement. They want you to look at this case under the- But the plea arrangement is binding. Yes, but they want you to look at this case under- It shall get 17 years. Yes. Yes, that's correct. I thought what we had to decide here was whether we issued a certificate of appealability on whether Simmons and Miller apply. I don't think it applies, Your Honor. You don't think Simmons applies? No, I do not think it applies. All right. Now, if Simmons applies, does the government have a fallback position? The fallback position- Can the government win if Simmons applies? Yes, Your Honor. And how do you do that? You do look at it because you look at the offense itself. The offense itself. Is this an offense punishable by maximum term of imprisonment of 10 years or more as prescribed by law? That sounds like a HAARP argument. As prescribed by the state legislature. That sounds like HAARP. No, it's not what- And Simmons overruled HAARP. It's different. I would submit, Your Honor, respectfully- Tell us how that's different from HAARP. It's different because in HAARP you looked at what could a court impose, what was the- It was an issue of what was the worst defendant- What could the worst defendant receive? That's a hypothetical defense. That's right. And what I'm saying is this is more of a category question. We're talking about serious drug offense. It has to do with how did the state legislature of North Carolina, how did that categorize this offense? And by this judgment itself, it shows that the maximum is 10 years in prison. It's not conditional on anything. The state court chose- It's not conditional on aggravated- No, it's not, Your Honor. The state court chose to give a package deal. He didn't walk out of there with a three-year sentence. They want you to assign- The three-year sentence was presumptive in absence of aggravated factors. But the presumptive only applies, that rule only applies if there's no plea agreement. He had a plea agreement. That's a separate provision of North Carolina law where you don't have to define any aggravating factors. The judgment says that. If we're going to give credence to what the state of North Carolina does and their sentencing practices, then we're not going to go behind them and go, well, instead of baking this big sheet cake, you should have looked at individual cases. Are you arguing that the judge in these cases, after this plea agreement, could have come out and said, you know, you've agreed to 17 years, but I'm going to give them 35, and he wouldn't have been able to withdraw his plea? Is that your argument? No, it's not my argument. Well, then I'm really having difficulty. But my argument is, Your Honor, Judge Davis, respectfully, is you look at the offense- Just a moment, just a moment. You say you need findings to get to the aggravated level, right? Unless there's a plea agreement. Unless there's a plea agreement. And the plea agreement here bound everybody to a non-aggravated sentence. It doesn't change the nature of the offense. What is between night and day? It doesn't change- I don't know, I can't, I don't find any space- I'm sorry, Your Honor. Between white and black. I'm sorry. Between night and day. I understand what you're saying. It's a zero-sum situation, isn't it? You don't look to see what did somebody get, what did they receive. This Court has rejected that in the Simmons context about what did somebody receive. But this was an agreed sentence. Yes, but you look to see- He shall receive 17 years. Yes, but the whole issue is, is this an offense for which the maximum term of imprisonment of 10 years or more is prescribed by law? Not that he got it. But do you disagree with me that he couldn't have gotten 10 years under this plea? He got a 17-year sentence. And what I'm saying is that you can't- But he couldn't have gotten 10 years on this H felony. With all respect, please. Didn't you disagree with me on that? Yes, Your Honor. But what I'm saying is that- And anything else is hypothetical. What I'm saying is that you don't go there. What I'm saying is that what they want you to do is to go back and go, okay, there was no plea agreement. And back in 1984, 30 years ago, we want you to go back and go, well, now, we want him sentenced one at a time. Let's have him sentenced one at a time and we'll see what's what. And what I'm saying is that this Court gives credence to North Carolina sentencing procedures that it was perfectly valid to give a consolidated sentence. And that Court didn't envision that later an argument would be made by the very defendant that took the plea that you could apportion in that judgment a three-year sentence here, a three-year sentence here, a three-year sentence here. It's very difficult, if not impossible, to sever all this out. That's really their argument. They're conducting a hypothetical argument of, if I had been sentenced for this one crime and there were no plea agreement, then what would I have gotten? What I'm saying is that they want to take the part of the plea agreement where the part of the judgment where there's no aggravating factors. They want to keep that. Let's keep that. And now let's look at the individual crimes and say, well, could you have gotten 10 years? And what I say to you is that turns it all on its head. That's what I respectfully say. Your Honors know far more about the law than I ever will. But I'm just saying that they're taking part of what happened and then trying to keep part of it like the aggravating factors, and then they're trying to say, well, now, if we did one case, take one of them out. One egg out of the cake. And then we would be able to tell what would happen with that one crime. And I'm saying to you my respectful argument to this Court is you can't separate them. That's my argument. Do you say that you could win even if Simmons applies? Yes, because it's an offense for which the maximum term of imprisonment of 10 years or more is prescribed by law. Do you agree that Simmons applies to ACCA? No, I don't. I do not. Well, do you agree that Harp applied to ACCA? Harp has already been overruled by this Court. But did it apply to ACCA? We held it applied to ACCA. I'm familiar with the case Judge Williams held, but I think the logic of that should be changed somewhat to look at what is a serious drug offense. Is it an offense for which the maximum term of imprisonment of 10 years or more is prescribed by law? And most courts that have looked at that, other circuits have said it's the state statutory ceiling. Not what somebody could get, not what an individual could get, but how did the state categorize that crime? So you disagree with Simmons? Well, it doesn't apply here, no. So you disagree with it and you agree with Harp? No, I don't. But Simmons was the in-bank decision of this Court. Your Honor, I respect the decisions of this Court. I'm sorry, Your Honor. Simmons is a pretty strong precedent here because it was an in-bank decision of the Court. Yes, but it dealt with a crime punishable by a term of imprisonment exceeding one year. It dealt with the minimum level entry of crime to make a felony. And you said Harp is bad law. It overruled it. Yes, that's right. And you say it doesn't apply to ACCA, but Harp applies to ACCA. What I'm saying is that this definition is different, and courts that have looked at it have found that this should be considered as a category of crime. It's what did the state categorize it. That is, the state legislature. It's like a ceiling. What did they prescribe as a ceiling? The definition is different. I'm not asking the Court. I respect the Court, respect all the judges, respect the decisions of the Court. If I said anything contrary, I apologize. But I'm just saying Simmons doesn't apply to ACCA. Now, what did you say? You have an alternative argument here that we ought to remand it to the Middle District of North Carolina to let the district court decide it first. It's pending. Your motion to remand is pending. Do you pursue that today as well? Would you prefer that? I mean, that motion's already here. That motion's pending? Yes, Your Honor. And what's the reason we should remand it rather than decide it now? What's your best argument that we ought to put off this issue, these issues, and send it to Judge Schroeder, who had it before, or somebody else at the Middle District of North Carolina, and let the district court deal with it first? You say that there are a couple of district judges in Eastern District of North Carolina who have agreed with your proposition. And so why do you want us to send this back to the district court without addressing the issue to let them go first now? I don't know whether you should or not. Well, there's got to be some principle out there somewhere. Have we done that before? Well, I'm sure it is, but the district judge never ruled on anything. Judicial efficiency or prudence or what's restraint or what's the theory for putting it off? It looks to me like the argument to the contrary would be, and they may get up here and say it, that if this decision would be of interest to all the district judges and all the courts in the Fourth Circuit, the issue that's presented here, it might be helpful to everybody. And if it is helpful, it might be helpful to get it out there ASAP kind of. There's one case in the Eastern District that is pending waiting this decision. I know that. Right, and there might be others around. I don't know of any others, but I do know of one. I know in that Miller case, the government told us they had 100 or more folks in prison that were waiting the decision on whether Simmons was going to be retroactive. So there was an impact out there. I don't think it's of that magnitude. Okay. I just know of one. Okay. It's whatever the court thinks. I didn't mean to interrupt you, but I wanted you to say something about that motion to remand. I've made my argument. Which is pending here, too. We have that as well as we have the appeal and then we have the motion to remand. Yes, sir. In the alternative that you filed. Well, the district court never considered any of these issues. All this stuff came up after Judge Schroeder ruled in 2010. And that's right. The spring court decision on which Simmons was based came afterward and then Miller came. All this stuff is post. I understand that. So, you know, you could argue that it's not fair to Judge Schroeder to get on the face of it and look like he's getting reversed on new authority that he didn't have an opportunity to take into consideration. There's that. Yes, sir. Counsel, what do you make of the fact that the Supreme Court sent this back to us for consideration under Miller? Well, at the time we were in contact with the Solicitor General and somebody in that office had some questions about it and they just agreed to vacate and remand it. So that wasn't what we wanted done. So you disagreed with the Solicitor General's? Yes, sir. Does that happen often? Yes, sir. Who wins those fights? They do. My time is up. Thank you. Thank you for your courtesy. Thank you very much. Now, Ms. Waring, you have a couple minutes, three minutes. Ms. Waring, may I ask you a question? Yes, Your Honor. If the court sentences exactly as it is, but the district court did give sentencing aggravating factors, do you think that the structure of the content or whatever the wording of the plea agreement would preclude a similar analysis? It would be favorable to you? Your Honor, this court and subsequent courts are limited to the Shepard documents that are approved and right now we only have the plea agreement from 1984. So that once the government did not find aggravating factors, they cannot come back and say, oh, well, here are aggravating factors, right? No, no, no, no, no. No, the court found aggravating factors. Okay. In the record. Okay. But still, that's the same plea agreement and the same sentence. Would it preclude us from looking at those aggravating factors and saying, in fact, you qualify? Even though the plea agreement said, no, you can only get this sentence. If there were aggravating factors, could we still look at it and say, under Simmons, this is not hypothetical, but, in fact, you do reach the 10 years or more in terms of that or not? If there were aggravating factors and he did reach and he was actually sentenced to the 10 years or more, then, yes. But, like, on a situation like this, you know, the court, like, I'm going to accept this, but I'm telling you, there's a lot of aggravating factors here. You had this, you had that, you had that. I'm going to go ahead and do this plea agreement because the government, for some reason, wants to do it, so I'm going to do it. But well-stated aggravating factors, but the same sentence, same plea agreement, would we be able to look at this under Simmons and say, no, there are existing factors that would push this to 10 years. Would we be precluded from that simply because of the plea agreement and the actual presumptive sentences given? Yes, Your Honor, because the presumptive sentences given were not over 10 years, individually for each conviction. The factors wouldn't make any difference, then? The aggravating factors would not make any difference. They would only make a difference if they actually sentenced him to 10 years or more, and that's what he was given. Oh, but then you go back to the actual sentencing control. I thought the whole idea was not what you actually received but what you could have received. No, that's the hypothetical defendant standard that this court threw out in Hart. No, what you individually could have received, not what you received. Even Simmons didn't change that. No, Your Honor. Simmons didn't change what you actually get. What Simmons said, it has to be a sentence that you could have got as the maximum you could have got, not what you actually are sentenced to. But you're telling me even if the factors are there, the mere fact that you don't get that sentence would preclude us to look at that? Yes, Your Honor. Okay, well tell me why. Well, Your Honor, that argument is kind of going off of the Hart standard that was already thrown out. I understand that is actually not what you could have received or any hypothetical worst defendant could have received. However, that's what the court should look at, what you individually received and not what you could have received because that's still playing in the muddy waters of a hypothetical defendant standard. So you're saying the plea agreement created a ceiling for the individual? Yes, Your Honor, the plea agreement did create a ceiling. But it would have to be your argument because then you said you can no longer go up to what you would have gotten given the factors that are in the record. You're saying now that the plea agreement itself becomes a ceiling. Yes, Your Honor. And where do you get that analysis from, from Simmons? Well, Your Honor, I see I've run out of time. Do you mind if I go ahead and answer all the questions? Just he allows it. You answer all the questions that are asked. Thank you. All right, don't worry. Go pay attention to that red light. Okay, I'll cover it up for you. Yes, go ahead. Well, Your Honor, if I could possibly repeat your question just so I understand it. Are you asking that we, are you asking whether we should not look at the individual, the hypothetical individual, even though that individual is yourself? Or are you asking us to look at the individual? The hypothetical is a red herring, really. It gets in the way. Hypothetically simply means what the worst person could get, the maximum you could get if you had all the bells and whistles of aggravation. The question is, individually, the court looked at the person and said, listen, you are terrible. You're a rascal. And this is why. Boom, boom, boom, boom, boom. You've been out of prison. You've been nothing but a, you know, malcontent the rest of your life. But just because they want to give you this plea agreement, I'm, you know, I must, I'm being soft today. I'm going to do it. But he well or she well establishes all of those. You're saying that now the plea agreement, because by a state of the art it becomes a ceiling, not for hypothetical, but for that individual. That's what you're saying. We will be precluded then, even under Simmons' analysis, to say these are the factors that exist that make, not a hypothetical, but you, you, based on this record of aggravating factors in the record, eligible for that 10 years or more. That's what you're saying. It becomes a ceiling, the plea agreement itself. That's right. You must be arguing that, right? Yes, Your Honor. Going back to the defense's cake analogy, I know you're hungry, so I deeply apologize. But the defense is still, that is still under the cake analogy that he attempted to use, saying that, well, this is what the cake is. Now we're asking you all to, or your honors, to cut it up individually into cupcakes. That is exactly what we are asking you, because that is ultimately what Simmons was stating, what the individual received. I understand that it is, that you're arguing or asking me whether the individual could have received the factors, and still we just overlook those factors for the plea agreement. So, yes, Your Honor. Under the chapter documents, we have to look to the plea agreement. Additionally, under the fair sentencing act, we also must look to the plea agreement, to what he actually received. And under that plea agreement, he only received the maximum presumptive sentence of three years or two years with the class H and class I felonies. But the problem is a plea agreement is no more than stating the sentence. It's just that the judge just repeats it. Isn't that like saying that you're taking a Simmons analysis and saying what you actually received sets the ceiling for the analysis? But it doesn't, does it? It's still what you, as an individual, could have gotten under this category of offense. And, therefore, if the factors are in the record, why would we be precluded from looking at those factors and saying, no, you have to look at that plea agreement is the ceiling now. But that's no more than what your actual sentence is, the analysis. Yes, Your Honor. And then I want you to respond to that then. How was that? Because it's the logic of the case of the jurisprudence we try to get at. Tell me why was that analysis under Simmons would be correct? With the plea agreement and also the fair sentencing act, he received the same presumptive terms of three years and two years. So in that case, additionally, as the government stated, his misdemeanor charge was dropped, which would have given him an additional two years. But the seven convictions he actually received matched the seven presumptive terms that were also in the statute. So had there been any aggravating or mitigating factors, or any factors for that matter, that would have allowed the judge to deviate away from those presumptive terms, he would have received anywhere between three and ten or even possibly less than three or two years if mitigating factors were found. Here, we only have to rely on the plea agreement because that's what he was individually sentenced to, which is also what the statute enacted in force at that time states that the judge can actually go off of simply the plea agreement. And because the judge went off the plea agreement and the plea agreement matched one of the statutory maximums of the presumptive term of two or three years, then we can only speculate that the judge accepted those findings for his individual convictions for each seven convictions of three or two years or more. The point is, you don't have to go as far as my hypothetical, perhaps in this case, to win. Perhaps there might be an argument. Yes, Your Honor, we do not have to go as far. Because there were no factors in this case. There were no aggravating factors in this case, no. All right. Any conclusion? Oh, I'm sorry. Davis? I have no further. Thank you very much, Ms. Waring. We appreciate it. And we very much appreciate Professor Korsinger to be back with us. We particularly appreciate the efforts of these law students at Wake Forest in assisting us along with you in handling this case. Thank you, Your Honor. And we'll come down and greet counsel and then take a short break.
judges: Robert B. King, Roger L. Gregory, Andre M. Davis